UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

STEPHEN A.,[1]

                          Plaintiff,                    DECISION AND ORDER

-vs-
                                                        1:19-CV-1679 (CJS)
COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

_____

## INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner") denying

Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"). Both parties have moved for judgment on the pleadings

pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., May 8, 2020, ECF No. 5;

Def.'s Mot., Jul. 8, 2020, ECF No. 6. Plaintiff argues that the Commissioner's denial of

his application for DIB and SSI benefits should be remanded for further proceedings

because the decision was based on the ALJ's improper evaluation of one impairment, and

his failure to develop the record with respect to a second impairment. The Commissioner

disputes Plaintiff's contentions, and maintains that the ALJ's decision is free of legal

error and supported by substantial evidence.

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 5] is denied, the Commissioner's motion [ECF No. 6] is granted, and the Clerk of Court is instructed to close the case.

LEGAL STANDARD

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999).   At step five, the burden shifts to the Commissioner only to demonstrate that there is other

work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff filed his DIB and SSI applications on June 8, 2016, alleging an onset date of April 14, 2016. Transcript ("Tr."), 182–88, Mar. 9, 2020, ECF No. 4. In his applications, Plaintiff alleged that his ability to work was limited by low blood pressure, heart palpitation, and ammonia in his blood. Tr. 202. On September 15, 2016, the Commissioner determined that Plaintiff was not disabled, and that he did not qualify for either DIB or SSI benefits. Tr. 69–75. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 94.

Plaintiff's request was approved, and the hearing was held via videoconference, with the Plaintiff appearing with his counsel in Buffalo, New York, and an impartial vocational expert also joining by phone. Tr. 33. The ALJ offered Plaintiff's counsel the opportunity to make an opening statement, and she responded as follows:

> Your Honor, the claimant is currently 53 years old, born in 1965. Throughout the period that he is claiming disability since April 2016 he's been closely approaching advanced age . . . . Past work was at least light and if not qualifying there we feel that his conditions, the heart palpitation, his hypo tension, tachycardia, associated headaches, would keep him from being a consistent reliable employee and therefore eliminating all work within the national economy.

Tr. 34.

3

As the hearing proceeded, however, Plaintiff's own testimony regarding his condition seemed to indicate a different explanation as to why he is unable to work. After reviewing Plaintiff's work history with him, the ALJ asked, "why can't you work a full-time job?" Tr. 38. Plaintiff responded: "Right now I get palpitations in my heart. I get . . . what I call foggy brain . . . Any time I get stressed or any time anything doesn't go right, I get symptoms . . . . I also get headaches from time to time." Tr. 38.

Plaintiff then proceeded to describe his treatment history, noting that he had begun treating with a cardiologist around Christmas of 2015, but had switched to an internal medicine practice in July of 2016. Tr. 42–43. The ALJ questioned why Plaintiff switched from a cardiologist to an internal specialist, and Plaintiff stated that he did not have a cardiological problem, but a problem dealing with anxiety and stress. Tr. 45. Plaintiff further stated that "the new doctor" gave him "the correct medications" and his "foggy brain" problem went from occurring over twenty times a week to occurring just a couple of times a week. Tr. 48–50. Further, on the correct medicine, the incidence of the heart palpitations that tended to occur with the foggy brain dropped to just once a week. Tr. 50. Nevertheless, Plaintiff stated he still wouldn't be a dependable employee because the stress of working would increase the occurrence of foggy brain and heart palpitations. Tr. 59.

In his decision on October 25, 2018 denying DIB and SSI benefits to Plaintiff, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through December 31, 2020. Tr. 17. At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

4

April 14, 2016, the alleged onset date. Tr. 17.

At step two, the ALJ determined that Plaintiff has several severe impairments: headaches, obesity, hypertension, tachycardia, and anxiety with panic. Tr. 17. The ALJ also found that Plaintiff has non-severe right hip arthritis, hepatomegaly, GERD and hypertriglyceridemia. Tr. 18. In so doing, the ALJ utilized the "special technique" required by 20 C.F.R. § 404.1520a,[2] and determined that Plaintiff's anxiety caused mild limitations in understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace. Tr. 17. The anxiety caused a moderate limitation with regard to adapting or managing himself. Tr. 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18.

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[3] ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) and § 416.967(c), "except [he] is limited to low stress work, defined as unskilled or semi-skilled work." T. 18. Based on

---

[2] The listings of specific mental impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1 § 12.00") provide the ALJ with detailed guidance for application of the "special technique." Generally, a claimant must satisfy at least two classes of criteria to justify a finding of a mental disorder. "Paragraph A" criteria include the "the medical criteria that must be present in [a claimaint's] medical evidence" to indicate a particular disorder (e.g., the mental disorder of "schizophrenia" requires that the evidence include medical documentation of hallucinations or another similar symptom). App'x 1 § 12.00A(2)(a). "Paragraph B" criteria are the four functional areas of (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. App'x 1 § 12.00A(2)(b). "Paragraph C" criteria are used to evaluate whether a claimant has a "serious and persistent" mental disorder.

[3] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

this RFC, at step four the ALJ found that Plaintiff is unable to perform his past relevant work as lead counter clerk. Tr. 21. However, based on Plaintiff's age, education, and experience, and on the testimony of the impartial VE, the ALJ found Plaintiff would be able to perform such jobs in the national economy as a patient transporter, cleaner, plant care manager, panel installer, cart attendant, rental car deliverer, companion, or hotel greeter. Tr. 22–23. Hence, the ALJ concluded that Plaintiff *is not* disabled for the purposes of DIB or SSI. Tr. 23.

On October 18, 2019, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

DISCUSSION

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the Secretary, and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

In the present case, Plaintiff maintains that the Commissioner's decision denying him DIB and SSI benefits must be remanded for further administrative proceedings because the ALJ made two errors. Pl. Mem. of Law, May 8, 2020, ECF No. 5-1. Specifically, Plaintiff argues that (1) the ALJ failed to properly evaluate Plaintiff's right hip osteoarthritis; and (2) the ALJ failed to develop the record as to Plaintiff's mental impairments by failing to obtain therapy notes and a medical opinion.

<u>The ALJ's Evaluation of Plaintiff's Right Hip Osteoarthritis</u>

In his decision, at step two of the five step analysis, the ALJ considered a multitude of impairments suggested by Plaintiff's medical records and his testimony. Tr. 17–18. Among those impairments was arthritis in Plaintiff's right hip. Tr. 18. In finding that the arthritis is non-severe, the ALJ stated:

> . . . [Plaintiff]'s right hip arthritis is not durationally significant. There is no mention of this until March 2018, and in June 2018, the right hip pain is described as having been experienced for the previous six months, but without injury . . . . Examination from prior treatment notes outline normal

gait and station and no arthralgias or on myalgias . . . and there are no updated treatment notes to suggest that this is an ongoing or functionally limiting impairment.

Tr. 18 (internal citations to the record omitted). Plaintiff maintains that it was "a legal error for an ALJ to solely rely on insufficient duration to find an impairment is non-severe." Pl. Mem. of Law at 9. Additionally, Plaintiff argues that the ALJ's error led him to an RFC determination that was not supported by substantial evidence.

At step two of the sequential evaluation process, the ALJ considers the objective medical evidence from acceptable medical sources to determine whether a claimant has a medically determinable impairment. 20 C.F.R. § 404.1521; 20 C.F.R. § 416.921. If the claimant's impairment is medically determinable, the ALJ then considers whether the impairment or combination of impairments is severe or non-severe. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "non-severe" if it "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522; 20 C.F.R. § 416.922. "Conversely, an impairment is 'severe' if it does significantly limit a claimant's physical or mental ability to do basic work activities." *Benoit v. Saul*, No. 3:19-CV-00443 (WIG), 2019 WL 6001596, at *3–4 (D. Conn. Nov. 14, 2019). The impairment, or combination of impairments, must also meet the duration requirement in 20 C.F.R. § 404.1509 and § 416.909, which provides that unless the impairment "is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."

In the present case, a careful reading of the ALJ's decision shows that the ALJ did not – as Plaintiff maintains – rely solely on duration to find that Plaintiff's hip arthritis

is "non-severe." Rather, in addition to noting that the hip arthritis "is not durationally significant," the ALJ also pointed to substantial evidence in the record that indicated that the impairment did not significantly limit Plaintiff's ability to do basic work activities. For instance, the ALJ pointed out that the hip pain was only first reported in March 2018 (Tr. 330, indicating also that the pain got better with stretching), and that Plaintiff reported in June 2018 that he had only experienced the pain for six months (Tr. 322). The ALJ also pointed out that notes from an exam in January 2018 indicated no arthralgias[4] and no myalgia[5] (Tr. 335), and notes from an exam in April 2018 indicated normal gait and station, as well as normal joints, bones and muscles (Tr. 327).

Lastly, the burden is on the Plaintiff to show that his right hip arthritis constitutes a severe impairment, and he failed to do so. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *McIntyre*, 758 F.3d at 150. Plaintiff did not allege the impairment in his original disability application (Tr. 224), the impairment is not mentioned in the report of the consultative medical examiner (Tr. 312–316), Plaintiff's counsel did not mention the impairment in his opening statement before the ALJ (Tr. 34), and "there are no updated treatment notes to suggest [Plaintiff's right hip arthritis] is an ongoing or functionally limiting impairment" (Tr. 18). At the hearing, Plaintiff's counsel gave Plaintiff the opportunity to discuss any limitations the right hip arthritis might impose. After noting that "x-rays have suggested there is arthritis in that right hip," counsel asked, "[i]f I

---

[4] Arthralgias is "a condition with pain and swelling, thought originally to involve the joints, but now known to localize to the shafts of long bones, occurring at regular intervals; there is sometimes abdominal pain, purpura, or edema." *Stedmans Medical Dictionary*, 75420 (2014).

[5] Myalgia is "[m]uscular pain." *Stedmans Medical Dictionary*, 581020 (2014).

would suggest that you return to work as the order clerk . . . . why do you think you couldn't return to work today?" Tr. 58. Plaintiff responded simply that he "wouldn't be dependable" because his foggy brain and heart palpitations "pop up whenever they want." Tr. 59. Plaintiff did not indicate, or even imply, that he was in any way limited by his hip.

Consequently, the Court finds both that the ALJ did not commit legal error by finding that Plaintiff's right hip arthritis is non-severe, and that the ALJ's finding is supported by substantial evidence. Furthermore, to the extent that the ALJ failed to mention Plaintiff's non-severe hip arthritis in his RFC discussion at step four of the five step analysis, the Court finds that procedural error to be harmless because there was no evidence in the record regarding functional limitations caused by a hip impairment. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand.").

<u>The ALJ's Duty to Develop the Record</u>

In his decision, the ALJ recognized that Plaintiff testified to having many issues associated with heart palpitations, "foggy brain," and headaches. Tr. 19. However, after a review of all the evidence, the ALJ concluded that these symptoms are all manifestations of Plaintiff's anxiety. Tr. 19. Consequently, the ALJ determined that Plaintiff's RFC included the non-exertional limitation that Plaintiff "is limited to low stress work, defined as unskilled or semi-skilled work." Tr. 18. Plaintiff points out that the ALJ's RFC discussion expressly acknowledged that Plaintiff had been in behavioral therapy, and yet failed to either seek records from that therapist or to seek a medical

opinion from a consultative psychiatric examiner. Pl. Mem. of Law at 12–14. Therefore, Plaintiff argues that the ALJ's RFC finding was in error because the ALJ failed to perform his duty to develop the record, and as a consequence improperly based the RFC finding on his own lay opinion.

It is well-settled that, even when a claimant is represented by counsel, the ALJ, unlike a judge in a trial, must affirmatively develop the record. *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009). Social Security disability determinations are "investigatory, or inquisitorial, rather than adversarial." *Moran v. Astrue*, 569 F.3d 108, 112–13 (2d Cir. 2009) (quoting *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004) (internal quotation marks omitted)). Therefore, "it is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Butts*, 388 F.3d at 386 (internal quotation marks omitted). An ALJ's failure to perform his or her duty to develop the record warrants remand. *See, e.g., Moran*, 569 F.3d at 113–15; *Rosa v. Callahan*, 168 F.3d 72, 79–80 (2d Cir. 1999). Nevertheless, the ALJ is under no duty to develop the administrative record where there are no obvious gaps, the available evidence is sufficient to establish a conclusion on a disability determination, and the record is consistent regarding the various medical and non-medical opinions. *Cichocki v. Astrue*, 534 F. App'x 71, 77 (2d Cir. 2013); *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996).

In the present case, the record shows that Plaintiff reported to his internal specialist on September 15, 2016, that he had been attending behavioral therapy sessions with licensed social worker ("LSW") Kathy Shannon, and was "very happy with his

progress" in reducing his anxiety. Tr. 364. By March 2, 2017, although there had apparently been a lull in his attendance, Plaintiff reported that he had once again been visiting LSW Shannon, and his anxiety was "much better," with approximately five episodes per week. Tr. 344. However, the sessions had apparently been discontinued by August 2, 2017, when his treatment notes from his internal specialist indicated that Plaintiff "was" seeing LSW Shannon. Tr. 374. In his hearing before the ALJ, Plaintiff stated that in total, he saw LSW Shannon "for about six months. She helped out tremendously but then she left the practice to go somewhere else so I didn't follow-up." Tr. 58. LSW Shannon did not make recommendations of the medication Plaintiff took to control his anxiety, "[t]hat came from the doctor." Tr. 58.

Indeed, as indicated above, it was the UBMD Internal Medicine practice at the UBMD Physicians Group, that helped Plaintiff get to the root of, and properly treat, his anxiety problem. Tr. 45. In summarizing the medical evidence that he relied upon to formulate his RFC, the ALJ recited the following history from the UBMD Physicians Group's treatment records:

> the most recent records document the claimant's anxiety, but note that he is not suicidal, has no emotional problems, and no depression [Tr. 326]. Additionally, the anxiety is described as having only intermittent symptoms, yet psychotropic medication dosage was increased [Tr. 328, 344]. Treating source also outlines that the claimant is doing well and with less frequency panic attacks [Tr. 333, 337]. Examinations routinely find that recent and remote memory is intact, mood and affect is normal, and judgment and insight are also normal [Tr. 334–35]. As early as August 2016, the claimant reported that symptoms had almost resolved, he was learning new techniques of coping, was working on breathing exercises and learning how to meditate [Tr. 369]. The following year, the claimant reported no longer attending any behavioral therapy sessions [Tr. 378] which also helps to endorse a finding of improvement and reduced frequency and intensity of symptoms.

Tr. 19–20 (citations to the administrative transcript substituted for the ALJ's internal citations to the record).

In this context, the Court finds that there were no obvious gaps in the record, and the available evidence was sufficient to establish a conclusion on a disability determination. To begin with, a licensed social worker is not considered to be an "acceptable medical source," whose evidence can help to establish the existence of a medically determinable impairment, provide a medical opinion, or be considered as a treating source. *See, e.g.,* 20 C.F.R. § 404.1502; *Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies*, SSR 06-03P, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). More importantly, the 70-plus pages of treatment notes from Plaintiff's internal specialists constituted substantial evidence showing an anxiety problem, the symptoms and episodic frequency of which significantly improved with appropriate medication and treatment. Finally, Plaintiff's own testimony, consistent with the internal specialists' treatment notes, supported the ALJ's conclusion. *See, e.g.,* Tr. 48 ("It has gotten better."); Tr. 213–14 (on his "Activities of Daily Living" report, Plaintiff noted he is caretaker of his daughter; has no problem with personal care; can prepare breakfast, lunch, and dinner; and does household chores, including snow removal).

Accordingly, the Court finds that the ALJ did not fail in his duty to develop the record, and that the RFC is supported by substantial evidence.

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 5] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 6] is granted. The Clerk of Court is directed to close this case.

DATED:      March 23, 2021
            Rochester, New York


                                    CHARLES J. SIRAGUSA
                                    United States District Judge

14